UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | MEMORANDUM & ORDER |
| v. | 07-CR-00874 |
| CHEYENNE SIMONS, | |
| Defendant. | |

**JACK B. WEINSTEIN**, Senior United States District Judge:

| Parties | Appearances |
|---|---|
| For United States | **M. Kristin Mace**<br>United States Attorney's Office<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, NY 11201<br>718-254-6879 |
| For Defendant | **Mildred M. Whalen**<br>Federal Defenders of New York, Inc.<br>One Pierrepont Plaza, 16th Floor<br>Brooklyn, NY 11201<br>718-330-1200 |

Table of Contents
I.   Introduction ................................................................................................................. 1
II.  Background ................................................................................................................. 3
     A.  Offense ................................................................................................................. 3
     B.  Guilty Plea ........................................................................................................... 3
     C.  Statutory Penalties and Guideline Sentence ........................................................ 4
         i.   Mandatory Terms of Imprisonment ................................................................ 4
         ii.  Guidelines Imprisonment Range .................................................................... 4
     D.  *Fatico* Hearing ..................................................................................................... 5
     E.  Sentencing ............................................................................................................ 5
III. Law .............................................................................................................................. 6
     A.  Fair Sentencing Act of 2010 ................................................................................ 6
     B.  The First Step Act of 2018 ................................................................................... 7
         i.   Generally ........................................................................................................ 7
         ii.  Retroactive Effect on Fair Sentencing Act ..................................................... 9
IV.  Application ................................................................................................................ 10
     A.  Eligibility ........................................................................................................... 10
     B.  Relevancy of *Fatico* Findings ............................................................................ 11
     C.  New Guideline and Statutory Ranges ................................................................ 12
         i.   Modified Statutory Penalties ........................................................................ 12
         ii.  Amended Guideline Range .......................................................................... 13
V.   Sentence Reduction ................................................................................................... 13
VI.  Conclusion ................................................................................................................ 15

**I.     Introduction**

Before the court is one of the first cases arising under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("the First Step Act" or "the Act"). Defendant Cheyenne Simons was sentenced over a decade ago to a twelve-year term of imprisonment for his role in a criminal conspiracy to distribute crack cocaine. He now moves to have his sentence reduced

1

pursuant to Section 404 of the First Step Act. The Act permits courts to retroactively lower the sentence of a defendant convicted of certain Controlled Substances Act violations involving crack cocaine.

The United States concedes that Simons is eligible for resentencing but argues that the court should decline to revisit its original sentence. "Nothing in the First Step Act," it contends, "changes the court's original assessment of the Section 3553(a) factors or suggests that a sentence should be arbitrarily reduced." Gov't Letter 5, ECF No. 754, Mar. 27, 2019.

The government is mistaken. We now have two well-considered statements of federal policy by Congress since the defendant was originally sentenced—the First Step Act and the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010) ("the Fair Sentencing Act"). Both favor sending fewer people to prison, imposing shorter sentences for drug crimes, and reducing the sentencing disparity between crack and powder cocaine offenses. The court must consider this new governmental policy when deciding whether a reduction of defendant's sentence is warranted. *See* Sent. Hr'g Tr., Apr. 22, 2019, *passim*.

An extra year, day, or moment of freedom from prison, when warranted, is worth pursuing by a prisoner, and, if justified by the law, should be granted by the court.

Defendant's motion is granted. His sentence is reduced to time served. An amended judgment and conviction shall be filed forthwith.

After serving more than 136 months of his 144-month original sentence, Simons is now eligible for immediate release. While this decision does not substantially shorten his sentence, justice favors freedom over unnecessary incarceration. Every day of imprisonment that can be appropriately shortened in a case like this should be. *See* Shaila Dewan & Alan Binder, *Just How Much of an Overhaul Is This Overhaul of the Nation's Criminal Justice System?* N.Y.

Times, Nov. 16, 2018 ("One day makes a difference because you don't know what that one day can bring about in a person's life," was declared by a former inmate properly released early from federal custody after serving more than 21 years for her involvement in a crack cocaine ring).

## II. Background

### A. Offense

Simons was arrested on December 12, 2007 for his involvement in a drug trafficking conspiracy at the Marcy Houses, a New York City Public Housing Project in the Bedford-Stuyvesant section of Brooklyn. *See* Presentence Investigation Report ("PSR") ¶21. Between May 2006 and November 2007, defendant and others conducted "hand-to-hand" street-level sales of crack cocaine (cocaine base) out of a building in the Marcy Houses. *Id.* ¶23. Simons purchased cocaine from a supplier, cooked the powder cocaine into cocaine base, and sold the base to his customers, as well as to his co-conspirators for re-sale. *Id.* ¶¶ 24, 27. He possessed firearms during the course of the drug distribution conspiracy, including a .380 caliber handgun that he sold to a confidential source. *Id.*

### B. Guilty Plea

On July 8, 2008, Simons pled guilty to eighteen counts in the indictment: count 1, conspiracy to distribute 50 grams or more of cocaine base, a violation of 21 U.S.C. § 846, § 841(a)(1), and § 841(b)(1)(A)(iii); counts 6, 8–13, 21–25, 27, 31, and 33, distribution of five grams or more of cocaine base, violations of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(iii); counts 12 and 29, distribution of cocaine base, violations of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C); and count 39, carrying and use of a firearm during and in relation to a drug trafficking crime, a violation of 21 U.S.C. § 924(c). *Id.* ¶¶1–20.

### C. Statutory Penalties and Guideline Sentence

#### i. Mandatory Terms of Imprisonment

At the time of sentencing, count 1 was subject to a ten-year mandatory minimum sentence and a maximum term of imprisonment of life. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (effective July 27, 2006 to Apr. 14, 2009).

Count 39, the gun charge, carried a minimum term of imprisonment of five years, to run consecutively to the term imposed for the drug trafficking conspiracy. *See* 18 U.S.C. § 924(c). Simons was not subject to this five-year minimum at his original sentencing pursuant to *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009). *Williams* held that the mandatory minimum sentence for carrying a firearm under 18 U.S.C. § 924(c) did not apply when the defendant is subject to a longer mandatory minimum for a drug trafficking offense that was part of the same criminal transaction or set of operative facts. *Id.* at 168. It was overruled by *Abbott v. United States*, 562 U.S. 8 (2010). Upon any re-sentencing, Simons would be subject to a five-year consecutive mandatory minimum sentence for the firearm offense. *See id.*; 18 U.S.C. § 924(c).

#### ii. Guidelines Imprisonment Range

Simons was found to be a career offender pursuant to U.S.S.G. § 4B1.1(a). The base offense level for a "career offender" is determined by the maximum penalty that can be imposed for the offense. *See* U.S.S.G. § 4B1.1(b). Because count 1 was subject to a maximum penalty of life, his base offense level was 37 and his criminal history category was VI. After a reduction of three points for acceptance of responsibility, his total offense level was 34. The Guidelines imprisonment range was 262 to 327 months.

### D. *Fatico* Hearing

A *Fatico* hearing was conducted at which the court determined that Simons sold more than 500 grams of crack cocaine during and in furtherance of the conspiracy. *See United States v. Simons*, No. 07-CR-874, 2009 WL 1406971, at *2 (E.D.N.Y. May 4, 2009).

### E. Sentencing

On March 27, 2009, Simons was sentenced to 12 years in prison: the 10-year minimum sentence then permitted by statute on count 1, conspiracy to distribute 50 grams or more of crack cocaine, 21 U.S.C. § 846, § 841(a)(1) and § 841(b)(1)(A)(iii); and 2 years for count 39, carrying and use of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c), that sentence to run consecutively to the sentence imposed on count 1. The terms of imprisonment imposed for the other counts were all five years or less, concurrent. He was also sentenced to five years supervised release, concurrent on all counts.

The court explained its reasoning for the sentence imposed:

> Respectful consideration was given to the sentencing guidelines, the Sentencing Commission's policy statements and all other factors listed 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. . . [C]onsidered [was] the "nature and circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). The offense is serious. The defendant was a member of a gang that disturbed the peace and threated the safety of a public housing project. The defendant has substantial medical issues. Simons has a need for vocational and educational training that can best be accomplished while he is incarcerated for a significant length of time. The sentence imposed reflects the seriousness of the offense, will promote respect for the law and provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence. General deterrence is satisfied with the sentence imposed. The sentence will send a clear message that any involvement in drug gangs will result in a substantial prison sentence. Specific deterrence is achieved through incapacitation.

*Id.* at *3.

## III. Law

### A. Fair Sentencing Act of 2010

Congress enacted the Fair Sentencing Act in August 2010. *See* Pub. L. 111-220, 124 Stat. 2372 (2010). It did so to reform a penalty structure for crack cocaine offenses that was considered by many to be overly harsh and to have a disparate heavy impact on African-American defendants. *See Dorsey v. United States*, 567 U.S. 260, 268 (2012). In *Dorsey*, the Supreme Court explained:

> [T]he [United States Sentencing] Commission and others in the law enforcement community strongly criticized Congress' decision to set the crack-to-powder mandatory minimum ratio at 100–to–1. The Commission issued four separate reports telling Congress that the ratio was too high and unjustified because, for example, research showed the relative harm between crack and powder cocaine less severe than 100–to–1, because sentences embodying that ratio could not achieve the Sentencing Reform Act's "uniformity" goal of treating like offenders alike, because they could not achieve the "proportionality" goal of treating different offenders (e.g., major drug traffickers and low-level dealers) differently, and because the public had come to understand sentences embodying the 100–to–1 ratio as reflecting unjustified race-based differences. . . . In 2010, Congress accepted the Commission's recommendations . . . and enacted the Fair Sentencing Act into law.

*Id.* at 268–69.

The Fair Sentencing Act lowered the statutory penalties for some offenses involving crack cocaine, reducing the sentencing disparity between crack and powder cocaine from 100:1 to 18:1. *See* Pub. L. 111-220, 124 Stat. 2372 (2010). Section 2 changed the penalty scheme for cocaine base offenses as follows:

> the amount of crack cocaine required to trigger a five-year mandatory minimum sentence was increased from 5 grams to 28 grams, 21 U.S.C. § 841(b)(1)(B)(iii); and

6

> the amount of crack cocaine required to trigger a ten-year mandatory minimum sentence was increased from 50 to 280 grams, 21 U.S.C. § 841(b)(1)(A)(iii).

*Id.* at 2372; *see Dorsey,* 567 U.S. at 269. Section 3 eliminated the mandatory minimum sentence for simple possession of crack cocaine. The Fair Sentencing Act of 2010, Pub. L. 111-220, § 3, 124 Stat. 2372, 2372 (2010).

The Fair Sentencing Act did not apply retroactively. *See Dorsey*, 567 U.S. at 281 (holding that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred).

### B. The First Step Act of 2018

#### i. Generally

Enacted in 2018, the First Step Act was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system. It ushered in small changes to the "tough-on-crime" prison and sentencing laws of the 1980s and 1990s that led to an explosion in federal prison populations and costs. *See* Nicholas Fandos, *Senate Passes Bipartisan Criminal Justice Bill*, N.Y. Times, Dec. 18, 2018. ("The Senate overwhelmingly approved on Tuesday the most substantial changes in a generation to the tough-on crime prison and sentencing laws that ballooned the federal prison population and created a criminal justice system that many viewed as costly and unfair.").

The Act modified prior sentencing law and expanded vocational training, early-release programs, and other programing designed to reduce recidivism. *Id*. Congress aimed to "enhance public safety by improving the effectiveness and efficiency of the Federal prison system with offender risk and needs assessment, individual risk reduction incentives and rewards, and risk and recidivism reduction." H.R. Rep. No. 115-699, at 22 (2018); *cf.* Dewan & Binder, *supra*

("Evidence has mounted that the country's sprawling system of punishment was counterproductive, resulting in high recidivism rates. Studies showed that even brief stays in jail disrupts people's lives and [often] make them more likely to commit crime. And many states realized that without substantive change they would be spending an ever-greater portion of their budgets on prisons.").

Growing prison populations and the high costs of incarceration—averaging more than $30,000 per year for each prisoner in federal custody—were a motivating consideration for the Act. *See* Ames Grawert et al., *Ending Mass Incarceration: A Presidential Agenda*, Brennan Center for Justice 1, 2 (2019); H.R. Rep. No 115-699, at 22 (2018) (explaining that Congress saw a need to reform the federal prison system "through the implementation of corrections policy reforms designed to enhance public safety by improving the effectiveness and efficiency of the federal prison system in order to control corrections spending, manage the prison population, and reduce recidivism."). A House Judiciary Committee report explained the relationship between rising prison costs and public safety:

> [T]he Committee is deeply concerned with the increased burden to taxpayers for the burgeoning costs of inmate incarceration, which has also led to increased pressure on the Department's budget and other important Department priorities being forced into competition for these limited funds.
>
> [Bureau of Prisons] has a growing prison population that, because of its rising costs, is becoming a real and immediate threat to public safety. The growing prison budget is consuming an ever-increasing percentage of the Department of Justice's budget. According to the Statement of the Department's Inspector General before Congress on March 14, 2013, concerning oversight of the Department of Justice: "it is clear that something must be done . . . the Department cannot solve this challenge by spending more money to operate more federal prisons unless it is prepared to make drastic cuts to other important areas of the Department's operations."
>
> Further, according to the Department's Criminal Division in 2013: ". . . the challenges for federal criminal justice have increased dramatically and the

choices we all face—Congress, the Judiciary, the Executive Branch—are that much clearer and more stark: control federal prison spending or see significant reductions in the resources available for all non-prison criminal justice areas. If the current spending trajectory continues and we do not reduce the prison population and prison spending, there will continue to be fewer and fewer prosecutors to bring charges, fewer agents to investigate federal crimes, less support to state and local criminal justice partners, less programs, and cuts along a range of other criminal justice priorities . . ."

Taken together, reductions in public safety spending that have already occurred and that are likely to continue in the coming years mean that the remarkable public safety achievements of the last 20 years are threatened unless reforms are instituted to make our public safety expenditures smarter and more productive.

H.R. Rep. No. 115-699, at 23–24 (2018) (internal citations omitted).

### ii. Retroactive Effect on Fair Sentencing Act

Section 404 of the First Step Act makes retroactive reforms enacted by the Fair Sentencing Act. It allows courts to impose reduced sentences on any prisoner who is still serving a sentence for a "covered offense" if that sentence was imposed before the Fair Sentencing Act's penalty structure applied. First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018).

Section 404(b) provides:

> DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.

A "covered offense" is defined in Section 404(a) as

> a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010.

Relief under the First Step Act is discretionary. *See id.* § 404(c) (providing that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Section 404(c) places two limits on the court's re-sentencing power.

> LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.

*Id.*

## IV. Application

### A. Eligibility

Simons is eligible for relief under the First Step Act.

*First*, his drug convictions are "covered offenses." *See id.* § 404(a). He pled guilty to violations of 21 U.S.C. § 841(b)(1) and § 841(a)(1), for which the statutory penalties were modified by the Fair Sentencing Act. The mandatory minimum sentence on count 1 was reduced to 5 years, and the maximum sentence reduced to 40 years; the mandatory minimum sentences on counts 6, 8–11, 13, 21–25, 27, 31, and 33 were abolished, and the maximum sentences were reduced to 20 years. *Second*, he was sentenced in March 2009, more than a year before the Fair Sentencing Act's new penalty scheme was enacted. *See id.* § 404(b). *Third*, neither of the statute's limitations apply to him. *See id.* § 404(c). Simons continues to serve a sentence that has not already been reduced to post-Fair Sentencing Act levels and has made no prior motion for reduction of sentence since the First Step Act was enacted. *See id.*

Pursuant to the provisions of the Fair Sentencing Act of 2010, made retroactive by the First Step Act of 2018, Simons is no longer subject to a 10-year mandatory minimum sentence

on count 1, conspiracy to distribute more than 50 grams of crack cocaine. The term of imprisonment for this offense may, in this court's discretion, be reduced to five years—the current mandatory minimum for trafficking between 28 to 280 grams of crack cocaine under § 841(b)(1). *See id.* § 404(b).

### B. Relevancy of *Fatico* Findings

Simons was indicted by a grand jury for conspiracy to possess with the intent to distribute more than 50 grams of crack cocaine. At his guilty plea, he admitted that the conspiracy involved at least 50 grams of crack cocaine. *See* Guilty Plea Tr. 30–31, July 8, 2008, ECF No. 125. No other findings or admissions concerning drug weight were made with respect to this count of the indictment at the guilty plea.

During a *Fatico* hearing held immediately prior to sentencing, Simons was found to have sold more than 500 grams of crack cocaine during and in furtherance of the conspiracy. Any argument that Simons is ineligible for relief on the basis that his actual conduct involved distribution of "280 grams or more of cocaine base," triggering the § 841(b)(1)(A) penalties and a 10-year minimum term of imprisonment, is unsound. Statutory penalties are determined by facts submitted to a grand jury, a trial jury, or established by a guilty plea. Findings by a judge, pursuant to a *Fatico* hearing, may be used to determine a sentence within the statutory penalties, but do not establish statutory penalties and cannot change the mandatory minimum sentence now applicable. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013) ("Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. . . . Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury.").

### C. New Guideline and Statutory Ranges

#### i. Modified Statutory Penalties

Recent federal policy has changed the statutory penalties for defendant's drug convictions. Count 1 now has a statutory sentencing range of 5 to 40 years and counts 6, 8–11, 13, 21–25, 27, 31, and 33 no longer carry minimum terms. Presence Report Add. ¶112. Count 39, the firearm offense, has a five-year minimum, to run consecutively to the sentence imposed for his drug trafficking offenses. *See Abbott*, 562 U.S. at 28.

Statutory penalty ranges serve as an anchor for a district court alongside its review of the Guidelines and the statutory factors. *See United States v. Currie*, 739 F.3d 960, 966 (7th Cir. 2014). As the United States Court of Appeals for the Seventh Circuit explained in *United States v. Currie*:

> Statutory minima and maxima have an obvious anchoring effect on the judge's determination of a reasonable sentence in the sense that they demarcate the range within which the judge may impose a sentence. *Peugh v. United States*, [569 U.S. 530], 133 S.Ct. 2072, 2082–84, 186 L.Ed.2d 84 (2013), makes this same point with respect to the Sentencing Guidelines. . . . In rejecting the view of this and other courts that the advisory nature of the Guidelines obviates any *ex post facto* problem (because a judge is free in the exercise of her discretion to impose a sentence outside of the Guidelines range), the Supreme Court emphasized that the Guidelines still supply the framework for the sentencing decision: the judge must begin her analysis with the correctly-calculated Guidelines range, remain cognizant of the Guidelines throughout the process, and have a justification for both a deviation from the Guidelines range and its extent. Thus, even a non-Guidelines sentence is, in the end, a product of the Guidelines. This is all the more true when it comes to statutory limits. And absent an express statement like 'This is a reasonable sentence, and I would have imposed it even without the ten-year minimum,' it is difficult to say whether the court would have arrived at the same sentence had it realized it was bound by a significantly lower statutory minimum.

*Id.* (internal citations omitted).

### ii. Amended Guideline Range

Defendant's career offender guideline calculation is reduced from 37 to 34 because the maximum term of imprisonment on count 1 has been reduced to 40 years. *See* Presentence Report Add. ¶68. With credit for timely acceptance of responsibility, his total offense level is now 31. *Id.* ¶70. His criminal history category is VI and the guideline range of imprisonment is 188 to 235 months. *Id.* ¶113. Pursuant to U.S.S.G. § 4B1.1(c)(2)(B), however, the recommended Guidelines range is increased to 262–327 months because of his 18 U.S.C. § 924(c) conviction. *Id.* A district court uses "the Guidelines range as the starting point in the analysis and impose[s] a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (citation omitted).

### V. Sentence Reduction

After a review of the record, this court finds that a reduction of defendant's sentence is warranted. *See* 18 U.S.C. § 3553(a); *Pepper v. United States*, 562 U.S. 476, 481 (2011) (permitting district courts to consider evidence of post-sentencing rehabilitation at re-sentencing). He has served 136 months of his 144-month sentence. His behavior while in custody has been relatively benign. *See* Def.'s Sent. Mem., Ex. A, at 2, ECF No. 755, Apr. 1, 2019 (report showing eight relatively small disciplinary infractions over 11 years, one for an assault without serious injury from 2009). He has taken substantial steps during his period of incarceration to achieve the rehabilitative goals sought by the original sentence imposed, attending prison courses. *See* Sent. Hr'g Tr., Apr. 22, 2019, *passim.*

Simons obtained his GED in 2012. Def.'s Sent. Mem., Ex. A. He completed a number of vocational and educational courses while in prison, including an apprenticeship in landscaping and courses in horticultural and greenhouse work, business entrepreneurship, goal setting,

marketing, and commercial driving. *Id.* He took courses geared towards personal improvement in the areas of sports, health, parenting, and family conflict resolution. *Id.*

He completed several drug education and treatment programs, and he is currently a drug treatment follow-up services participant. *Id.* He has worked at several different job assignments during his incarceration. *Id.* He has been promised a job working in HVAC after his release, which he hopes will allow him to support himself and his family. *Id.* at 4.

Defendant has maintained close relationships with his family while in custody, receiving letters of support from his friends, children, and other family members. *See id.* at Ex. B.

His term of imprisonment is reduced to time served. First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018); *see also* 18 U.S.C. § 3582(c)(1)(B); *United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *3, n. 2 (W.D.N.Y. Mar. 6, 2019) (denying request to impose a below-time-served sentence because it "would result in an overserved sentence, which . . . will not [be] permit[ed] for public safety and deterrence reasons."); U.S.S.G. § 1B1.10(b)(2)(C) (instructing that a reduction of a term of imprisonment because of an amendment to the guidelines "[i]n no event may . . . be less than the term of imprisonment the defendant has already served"). He is sentenced to four years of supervised release on all counts concurrent. *See* Sent. Hr'g Tr., Apr. 22, 2019. He will be subject to extensive monitoring while on supervised release.

Probation is directed to take immediate control over defendant's reentry into lawful life, with close supervision for 60 days as requested by probation. Probation shall work to secure for him: housing, food, employment, and other requirements of a lawful life. This period of extra help for defendant is the equivalent of the time provided by the Bureau of Prisons at the end of a long prison term for reentry into freedom from prison.

Simons has served more than 11 years in federal custody.  An eight-month reduction of his sentence does not provide less than just punishment nor does it undermine general or specific deterrence.  It promotes respect for the law while reflecting society's changing views about incarceration and the need to avoid unwarranted sentencing disparities between similarly-situated defendants.  It helps close the sentencing gap between crack and powder cocaine offenses and eliminates the disparity between defendant and those sentenced after the Fair Sentencing Act was enacted in 2010.

In imposing a reduction of defendant's sentence, this court considered Congress's intention, first with the Fair Sentencing Act of 2010 and now with the First Step Act of 2018, to limit government spending on incarceration and to decrease the number of inmates in federal custody.  *See* 18 U.S.C. § 3553(a)(5).  Public safety is not served by a defendant spending more time in prison than necessary.  An overly harsh sentence may prove counterproductive, increasing a defendant's likelihood to recidivate.  *See*, Dewan & Binder, *supra*.  The money it costs to keep defendant behind bars can be better spent on other means of crime control and prevention. *See* H.R. Rep. No. 115-699, at 23 (2018).

## VI.     Conclusion

Defendant Cheyenne Simons's motion to reduce his sentence is granted.  His term of incarceration is reduced to time served.  The term of supervised release shall be four years, concurrent on all counts.  The original sentence remains unchanged in all other respects.

Probation shall take immediate steps to assist the defendant in adjusting to his new freedom and to live a lawful, productive life after so many years in prison.

An amended judgment and conviction reflecting the terms of this memorandum and order shall be filed forthwith.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: April 22, 2019
Brooklyn, New York